UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| DOMTAR CORPORTATION ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br> Defendant, ) <br> ) <br> and ) <br> ) <br> KOEHLER PAPER SE, ) <br> MATRA AMERICAS LLC and, ) <br> MATRA ATLANTIC GmbH, ) <br> ) <br> Defendant-Intervenors. ) <br> ) | Court No. 24-00113 |

## DOMTAR CORPORATION'S
## MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to Rule 56.2 of the Rules of this Court, Plaintiff Domtar

Corporation moves for judgment on the agency record with regard to certain

aspects of the determination of the United States Department of Commerce

("Commerce") in *Thermal Paper From the Federal Republic of Germany:*

*Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89

Fed. Reg. 47517 (Dep't Commerce June 3, 2024) (the "*Final Results*").

Plaintiff respectfully requests the Court to rule that certain aspects of the *Final Results* are unsupported by substantial evidence on the record or otherwise not in accordance with law.  Plaintiff further requests that the Court remand the *Final Results* to Commerce with instructions to reconsider whether interest on unpaid antidumping duties should be deducted from constructed export price.  The reasons justifying this motion are set forth in the accompanying Memorandum Of Law In Support Of Domtar Corporation's Rule 56.2 Motion For Judgment Upon The Agency Record.

Respectfully submitted,

*/s/ Daniel L. Schneiderman*
Stephen J. Orava
SOrava@KSLAW.com

Daniel L. Schneiderman
dschneiderman@kslaw.com

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500

*Counsel For Domtar Corporation*

January 31, 2025

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |
|---|---|
| DOMTAR CORPORTATION ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00113 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| KOEHLER PAPER SE, ) | |
| MATRA AMERICAS LLC and, ) | |
| MATRA ATLANTIC GmbH, ) | |
| ) | |
| Defendant-Intervenors. ) | |

## <u>ORDER</u>

Upon consideration of Domtar Corporation's Rule 56.2 Motion For

Judgment Upon The Agency Record, and upon consideration of other papers

and proceedings herein, it is hereby

ORDERED that the motion is granted; and it is further

ORDERED that this case is remanded to the U.S. Department of

Commerce ("Commerce") with instructions to reconsider whether interest

on unpaid antidumping duties should be deducted from constructed export price and to recalculate Koehler's dumping margin consistent with the Court's opinion.

_____
Judge
U.S. Court of International Trade

Dated: _____

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

|  |  |  |
|---|---|---|
| DOMTAR CORPORTATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00113 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KOEHLER PAPER SE, | ) | |
| MATRA AMERICAS LLC and, | ) | |
| MATRA ATLANTIC GmbH, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**PLAINTIFF DOMTAR CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION FOR
JUDGMENT UPON THE AGENCY RECORD**

Stephen J. Orava
Daniel L. Schneiderman
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500

*Counsel For Domtar Corporation*

January 31, 2025

## <u>TABLE OF CONTENTS</u>

STATEMENT PURSUANT TO RULE 56.2 ............................................................1

    I.    ADMINISTRATIVE DETERMINATION SOUGHT TO BE
        REVIEWED ...........................................................................................1

    II.    PROCEDURAL HISTORY ....................................................................2

    III.    ISSUES PRESENTED ...........................................................................3

    IV.    STANDARD OF REVIEW ....................................................................3

ARGUMENT ......................................................................................................4

    I.    COMMERCE ERRED IN FAILING TO REDUCE CEP BY
        INTEREST ON UNPAID ANTIDUMPING DUTIES ........................4

        A.    Introduction ...............................................................................4

        B.    The Interest Expense At Issue Should Have Been
            Deducted From CEP As An Indirect Selling Expense ...............7

CONCLUSION AND PRAYER FOR RELIEF ......................................................12

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## Cases

*Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States*,
  48 CIT __, Slip Op. 2024-56 (May 8, 2024) .......................................8

*Consolidated Edison Co. v. NLRB*,
  305 U.S. 197 (1938)..............................................................................3

*CS Wind Vietnam Co. v. United States*,
  832 F.3d 1367 (Fed. Cir. 2016) ...........................................................3

*In re: Koehler Oberkirch GmbH*,
  2025 U.S. App. LEXIS 1001 (Fed. Cir. Jan. 16, 2025) .....................11

*Matra Americas, LLC v. United States*,
  681 F. Supp. 3d 1339 (Ct. Int'l Trade 2024) ...................................6, 7

*Metallverken Nederland B.V. v. United States*,
  728 F. Supp. 730 (Ct. Int'l Trade 1989) ..............................................3

*Papierfabrik August Koehler AG v. United States*,
  180 F. Supp. 3d 1211 (Ct. Int'l Trade 2016) .......................................5

*Papierfabrik August Koehler SE v. United States*,
  843 F.3d 1373 (Fed. Cir. 2016) ...........................................................5

*Suzano S.A. v. United States*,
  589 F. Supp. 3d 1225 (Ct. Int'l Trade 2022) .......................................4

*United States v. Koehler Oberkirch GmbH*,
  728 F. Supp. 3d 1322 (Ct. Int'l Trade 2024) ...................................6, 11

*United States v. Koehler Oberkirch GmbH*,
  731 F. Supp. 3d 1377 (Ct. Int'l Trade 2024) .....................................11

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951)...............................................................................3

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)........................................................................3

19 U.S.C. § 1677a(d)(1)..............................................................................8

19 U.S.C. § 1677a(d)(1)(D) ........................................................................8

**Other Authorities**

19 C.F.R. § 351.402(b)................................................................................8

*Certain Aluminum Foil From the Republic of Türkiye: Final
   Results of Antidumping Duty Administrative Review;
   2021-2022,* 89 Fed. Reg. 48889 (June 10, 2024)................................8

*Lightweight Thermal Paper from Germany*,
   76 Fed. Reg. 76360 (Dec. 7, 2011).................................................9, 10

*Lightweight Thermal Paper From China and Germany*,
   80 Fed. Reg. 5083 (Jan. 30, 2015).......................................................5

*Thermal Paper From Germany*,
   86 Fed. Reg. 54152 (Sept. 30, 2021) ...................................................6

**PLAINTIFF DOMTAR CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF RULE 56.2 MOTION FOR
JUDGMENT UPON THE AGENCY RECORD**

Plaintiff Domtar Corporation submits the following memorandum in support of its Motion for Judgment on the Agency Record in accordance with Rule 56.2(c) of the Rules of the United States Court of International Trade.  For the reasons set forth below, Plaintiff respectfully request that the Court reverse the challenged determination of the U.S. Department of Commerce ("Commerce") and remand with instructions to recalculate the dumping margin for the respondent Koehler Paper SE ("Koehler").

**STATEMENT PURSUANT TO RULE 56.2**

**I.    ADMINISTRATIVE DETERMINATION SOUGHT TO BE REVIEWED**

Plaintiff seeks review of the final results of the first administrative review of the antidumping duty order on thermal paper from Germany.  *See Thermal Paper From the Federal Republic of Germany: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 47517 (Dep't Commerce June 3, 2024) (P.R. 140) and the accompanying Issues and Decision Memorandum ("*IDM*") dated May 24, 2024 (P.R. 135) (altogether, the "*Final Results*").

## II.    PROCEDURAL HISTORY

The first administrative review of the antidumping order on thermal paper from Germany was initiated on December 22, 2022.  *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 50 (Jan. 3, 2023) (P.R. 10).  The period of review ("POR") covered entries during May 12, 2021, through October 31, 2022.  *Id*.  Koehler was the only individually examined producer/exporter in the review, and in the preliminary results, Commerce calculated a margin of 0.75 percent for that company.  *Thermal Paper From Germany: Preliminary Results of Antidumping Duty Administrative Review; 2021-2022*, 88 Fed. Reg. 83397 (Nov. 29, 2023) (P.R. 114).  The dumping margin was based on Koehler's reported constructed export price ("CEP") sales through its affiliated U.S. reseller, Matra Americas, LLC ("Matra").  Decision Memorandum for the Preliminary Results (Nov. 21, 2023) at 2-3, and 9-10 (P.R. 104).  Commerce issued its *Final Results* on May 24, 2024, in which the margin was revised to 0.76 percent.  *Thermal Paper From the Federal Republic of Germany: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 47517 (Dep't Commerce June 3, 2024) (P.R. 140).  This appeal ensued.

III.    **ISSUES PRESENTED**

This appeal presents the following issue:

- Whether Commerce's decision to treat interest accruing on unpaid antidumping duties during the POR as a component of Koehler's cost of production – rather than as a deduction from United States price – was supported by substantial evidence and in accordance with law.

For the reasons explained below, Commerce's decision with respect to this issue is unsupported by substantial evidence and otherwise not in accordance with law.

IV.    **STANDARD OF REVIEW**

The statute requires the Court to "hold unlawful any determination, finding, or conclusion found … to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under the substantial evidence standard, the Court is not to reweigh the evidence or substitute its judgment for that of Commerce. *Metallverken Nederland B.V. v. United States*, 13 CIT 1013, 1017, 728 F. Supp. 730, 734 (1989). The Court, however, must take into account the entire record, including evidence that detracts from the conclusion reached by Commerce. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1373 (Fed. Cir. 2016) (Commerce "must take into account whatever in

the record fairly detracts from" the weight of the evidence).  "Although Commerce

is not required to address all the evidence submitted," the agency "must address

any arguments made by the parties that are material to Commerce's

determination."  *Suzano S.A. v. United States*, 46 CIT ___, ___, 589 F. Supp. 3d

1225, 1233 (2022), quoting *Itochu Bldg. Prods., Co., Inc. v. United States*, 40

CIT__, __, 163 F. Supp. 3d 1330, 1337 (2016).  "An argument is material if it is a

'focal point' of a party's argument or if a final determination cannot be

'sufficiently reviewed without specific discussion of the issue.'"  *Id.*, quoting

*Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT 1174,

1177, 704 F. Supp. 1068, 1071 (1988).


## ARGUMENT

## I.    COMMERCE ERRED IN FAILING TO REDUCE CEP BY INTEREST ON UNPAID ANTIDUMPING DUTIES

### A.  Introduction

This Court is familiar with the factual background giving rise to the issue in

this dispute, but it bears repeating.  Prior to the investigation giving rise to the

current thermal paper antidumping duty order that was the subject of the

underlying review (case number A-428-850), Koehler was a respondent in an

antidumping proceeding involving substantially the same product, *i.e.*, lightweight

thermal paper ("LWTP").  The order on LWTP from Germany (case number A-

428-840) issued in 2008 and was later revoked at the conclusion of a sunset review

in 2015.  *See Lightweight Thermal Paper From the People's Republic of China and Germany: Continuation of the Antidumping and Countervailing Duty Orders on the People's Republic of China, Revocation of the Antidumping Duty Order on Germany*, 80 Fed. Reg. 5083 (Dep't Commerce Jan. 30, 2015).

In the second and third administrative reviews of that prior proceeding, Koehler attempted to reduce or eliminate its dumping margin through "fraudulent conduct" (by concealing from Commerce certain transshipped sales), resulting in the application of total adverse facts available ("AFA").  *Papierfabrik August Koehler AG v. United States*, 180 F. Supp. 3d 1211, 1221 (CIT 2016) (upholding use of AFA to address "fraudulent conduct" in the second administrative review), *aff'd* at 710 Fed. Appx. 889 (Fed. Cir. 2018), *cert denied*, 139 S. Ct. 1290 (2019). *See also Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1383 (Fed. Cir. 2016) (upholding use of AFA to address "fraudulent sales data" in the third administrative review), *cert denied*, 138 S. Ct. 555 (2017).  Koehler appealed Commerce's application of total AFA, but those appeals were unsuccessful.  *Id.*

Once the litigation concluded, Koehler was assessed roughly $200 million in antidumping duties for entries subject to the second and third administrative reviews of the *LWTP* order.  *See* Petitioners' Comments On The Initial Questionnaire Responses And Submission Of Rebuttal Factual Information (April 14, 2023) at Attachment 1, pages 2-6 and att. 1 (P.R. 52).  Although that liability

has been final and conclusive for years, it remained unpaid during the instant POR. *See IDM* at 5-7 (P.R. 135). Indeed, as of this writing, the same $200 million liability still has not been paid and is now the subject of an ongoing collections action by the government in Court No. 24-00014. *See United States v. Koehler Oberkirch GmbH*, 728 F. Supp. 3d 1322, 1325-26 (Ct. Int'l Tr. 2024).

Because U.S. Customs and Border Patrol ("CBP") charges interest on unpaid antidumping assessments, interest arising from the $200 million liability accrues each year. In the original investigation conducted during 2021, Commerce captured those interest expenses accruing during the period of investigation ("POI") within the financial expense ratio, *i.e.*, a component of cost of production ("COP"). *Thermal Paper From Germany: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 54152 (Sept. 30, 2021) at Comment 5. The domestic industry appealed that decision, arguing that Commerce failed to explain why it was appropriate to treat such interest expenses as a component of COP instead of as indirect selling expenses to be deducted from CEP. *Matra Americas, LLC v. United States*, 681 F. Supp. 3d 1339, 1380-82 (Ct. Int'l Tr. 2024). This Court agreed, and it remanded the matter "to allow Commerce to reconsider its position or supply an explanation." *Id*. at 1382. At the time of this writing, that

remand proceeding remains stayed pending resolution by the Federal Circuit of an

unrelated issue in *Stupp Corp. v. United States*. *See id*.

During the instant first review period, the amount of interest accruing on the

unpaid antidumping duties was $[          ]. Koehler's Supplemental Section A

Response (Aug. 22, 2023) at Exhibit SA-23 (C.R. 148). In the preliminary results,

however, Commerce did not capture this amount within U.S. indirect selling

expenses. Instead, as in the investigation, Commerce recalculated the financial

expense ratio to include the interest expenses accruing during the fiscal year.

Decision Memorandum for the Preliminary Results (Nov. 21, 2023) at 12 (P.R.

104). The domestic industry filed a case brief arguing that the interest expenses

should instead be deducted from CEP as indirect selling expenses. Petitioners'

Case Brief (April 26, 2024) at 6-9 (C.R. 263).

In the *Final Results*, Commerce declined to alter its methodology, although

(for the first time) it did provide an explanation. *IDM* at 6-7 (P.R. 135). That

explanation is unsupported by substantial evidence and is not in accordance with

law for the reasons set forth below.

### B. The Interest Expense At Issue Should Have Been Deducted From CEP As An Indirect Selling Expense

Commerce, in the *Final Results*, should have treated the $[          ] of

interest expense at issue as an indirect selling expense ("ISE") to be deducted from

CEP. The interest on Koehler's unpaid antidumping duty liability related

specifically to the company's U.S. thermal paper sales and to activities occurring in the United States, and thus, it should have been treated as a U.S. ISE pursuant to 19 U.S.C. § 1677a(d)(1)(D) and 19 C.F.R. § 351.402(b).

The statute permits the deduction of "any selling expenses," whether incurred by the foreign producer or an affiliated reseller in the United States, "in selling the subject merchandise." 19 U.S.C. § 1677a(d)(1). The applicable regulation clarifies that Commerce "will make adjustments for expenses associated with commercial activities in the United States that relate to the sale to an unaffiliated purchaser, no matter where or when paid." 19 C.F.R. § 351.402(b). Commerce's established practice under these provisions is to treat interest expenses incurred in selling the subject merchandise as ISEs (*i.e.*, price deductions) rather than as financial expenses (*i.e.*, cost components). *See Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2021-2022,* 89 Fed. Reg. 48889 (June 10, 2024), Dec. Memo at Comment 4. Moreover, expenses may be treated as ISEs even if they are incurred by the producer or exporter located outside the United States. *See Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States*, 48 CIT __, Slip Op. 2024-56 (May 8, 2024) at 30-33.

During the periods giving rise to the underlying liabilities at issue here, Koehler itself served as the importer of record and made direct sales of thermal

paper to unaffiliated U.S. customers.  *See Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360, 76364 (Dec. 7, 2011) (preliminary results of the 2009-2010 second administrative review) ("In the U.S. market, Koehler reported that its sales were made through three channels of distribution: (1) Market direct-shipment sales through its U.S. affiliated distributor, Koehler America, Inc. (*i.e.*, CEP sales), (2) warehouse sales made through Koehler America, Inc. (*i.e.*, CEP sales), (3) and direct sales from Koehler AG to the customer (*i.e.*, EP sales)…. Koehler has reported that it served as the importer of record for all of its U.S. sales during the POR").  The antidumping duties were "associated with commercial activities in the United States," and they necessarily "relate{d} to the sale to an unaffiliated purchaser."  Any interest accruing during the instant review period on such underlying liabilities should similarly have been deemed to relate to the same U.S. economic activities, and thus, it should have been treated as a price adjustment rather than as a cost component.

In the *Final Results*, Commerce erroneously decided not to treat the interest at issue as U.S. indirect selling expenses.  The reason given was because the underlying liability arose from thermal paper imports subject to the 2008 order rather than the current 2021 order.  *IDM* at 6-7 (P.R. 135).  Commerce did not explain why this purported distinction was dispositive under the applicable statute and regulation.  Moreover, Commerce's interpretation is unreasonable in view of

the facts that (1) both the 2008 and 2021 orders covered the same merchandise,[1] and (2) there is no disconnect between the interest accruing during the instant May 12, 2021 through October 31, 2022 period of review and Koehler's CEP sales during that same period.  The interest expenses at issue clearly arose from Koehler's thermal paper sales into the United States, and that alone is sufficient under the plain language of the statute and regulation to treat them as ISEs.  Commerce's decision not to treat the interest as selling expenses to be deducted from CEP was unsupported by substantial evidence and was not in accordance with law, and this case should be remanded for Commerce to reconsider its position and recalculate Koehler's dumping margin.

Plaintiff believes that recharacterizing the interest expenses at issue as U.S. ISEs is not only required by the statute but also makes for good policy.  Koehler should not be permitted to maintain virtually duty-free access to the U.S. thermal paper market, as would be enabled by the insignificant margin calculated in the *Final Results*, without paying final assessments on past thermal paper entries.  Allowing respondents like Koehler to avoid the payment of antidumping duties –

---

[1]     The scope of the 2021 thermal paper order includes everything covered by the scope of the 2008 LWTP order (*i.e.*, jumbo and converted thermal paper rolls in basis weights of 70 grams per square meter or less).  The scope of the 2021 order is slightly broader, because it also encompasses jumbo rolls in basis weights exceeding 70 grams per square meter.  *Compare IDM* at 2 (setting forth the scope of the 2021 order) (P.R. 135) *with Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360, 76361 (Dec. 7, 2011) (setting forth the scope of the 2008 order).  Accordingly, all of Koehler's thermal paper sales giving rise to the $200 million liability under the 2008 order also would fall within the scope of the 2021 order if imported today.

without it having any material impact on the calculation of dumping margins for entries made during the periods of nonpayment – would substantially diminish respondents' incentives for cooperating in these proceedings or for paying debts arising from these proceedings to the U.S. government.  At the moment, Koehler has no incentive to resolve the separate collections action pending before this Court in case number 24-00014, as demonstrated by Koehler's extensive efforts to contest service of process.  *See United States v. Koehler Oberkirch GmbH*, 728 F. Supp. 3d 1322 (Ct. Int'l Tr. 2024) (granting the government's motion for alternate service); *United States v. Koehler Oberkirch GmbH*, 731 F. Supp. 3d 1377 (Ct. Int'l Tr. 2024) (denying Koehler's motion for interlocutory appeal of the service issue); *In re: Koehler Oberkirch GmbH*, 2025 U.S. App. LEXIS 1001 (Fed. Cir. Jan. 16, 2025) (denying Koehler's requested writ of mandamus on the service issue).  If the interest on the outstanding debt were treated in such a way that it generated dumping margins on Koehler's current exports (*i.e.*, by deducting the expense from CEP), it would create an incentive for Koehler to (1) discontinue efforts to contest service of process in the ongoing collections litigation and (2) ultimately resolve its outstanding debt, thereby ensuring that interest will not continue to accrue in future periods in a way that significantly impacts dumping margins in this proceeding.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff requests that the Court enter judgment on the administrative record in its favor and remand the *Final Results* with instructions for Commerce to reconsider whether interest on unpaid antidumping duties should be deducted from CEP.

Respectfully submitted,

*/s/ Daniel L. Schneiderman*
Stephen J. Orava
SOrava@KSLAW.com

Daniel L. Schneiderman
dschneiderman@kslaw.com

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 737-0500

*Counsel For Domtar Corporation*

January 31, 2025

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's

*Standard Chambers Procedures*, the undersigned certifies that this brief complies

with the word count limitations set forth in the Court's scheduling order.

Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief

includes <u>2,596</u> words.  In preparing this certificate, the undersigned has relied upon

the word count feature of the word-processing system used to prepare the

submission.


*/s/ Daniel L. Schneiderman*
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW,
Washington, DC 20006
(202) 737-0500

*Counsel For Domtar Corporation*


January 31, 2025