**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |  |
|---|---|---|
| DOMTAR CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00113 |
| | ) | |
| UNITED STATES, | ) | PUBLIC VERSION |
| | ) | |
| Defendant, | ) | BPI removed from page 6 |
| and | ) | |
| | ) | |
| KOEHLER PAPER SE, | ) | |
| MATRA AMERICAS LLC and, | ) | |
| MATRA ATLANTIC GmbH, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |
| | ) | |
_____ )

**DEFENDANT'S RESPONSE TO PLAINTFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

 

YAAKOV A. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL                                   EMMA E. BOND
RUSLAN KLAFEHN                          Senior Trial Counsel
Attorney                                          Commercial Litigation Branch
Office of the Chief Counsel               U.S. Department of Justice
   for Trade Enforcement & Compliance    P.O. Box 480
U.S. Department of Commerce          Washington, DC 20044
                                                      (202) 305-2034
                                                      Email: emma.e.bond@usdoj.gov

April 1, 2025                                   *Attorneys for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ........................................................................................iii

DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD ........................................................................ 1

STATEMENT PURSUANT TO RULE 56.2 ................................................................ 2

    I.    The Administrative Determination Under Review .................................. 2

    II.   Issue Presented For Review ..................................................................... 2

STATEMENT OF FACTS ............................................................................................ 2

    I.    Commerce Initiates The First Administrative Review Of The 2021 Antidumping Duty Order On Thermal Paper From Germany ................... 2

    II.   Commerce Requests Information From Koehler Regarding Its Interest On Unpaid Duties Pursuant To A Prior 2008 Antidumping Duty Order .................... 4

    III.   In The Preliminary Results, Commerce Adjusts Koehler's Reported Cost Of Production To Include Interest Accrued On Unpaid Antidumping Duties From The Prior 2008 Antidumping Duty Order ............................... 7

    IV.   In The Final Results, Commerce Continues To Treat Interest Expenses On Unpaid Duties As A Component Of Koehler's Cost Of Production ..................... 8

SUMMARY OF THE ARGUMENT ........................................................................... 9

ARGUMENT .............................................................................................................. 10

    I.    Standard Of Review ............................................................................... 10

    II.   Commerce's Determination That Koehler's Accrued Interest On Unpaid Antidumping Duties Should Not Be Attributed To Constructed Export Price Is Lawful And Supported By Substantial Evidence ................................. 10

        A.  Background Regarding Adjustments To Constructed Export Price ......... 11

        B.  Substantial Evidence Supports Commerce's Finding That The Disputed Interest Expenses Are Not Expenses Incurred In Selling The Subject Merchandise To An Unaffiliated Purchaser ............................................. 13

III.     Domtar's Arguments Are Unpersuasive ............................................................... 17

CONCLUSION ......................................................................................................................... 23

## TABLE OF AUTHORITITES

**CASES**

*ABB, Inc. v. United States,*
   920 F.3d 811 (Fed. Cir. 2019) ................................................................. 11

*Ad Hoc Shrimp Trade Action Comm. v. United States,*
   925 F.Supp.2d 1367 ................................................................................. 12

*Apex Exports v. United States,*
   777 F.3d 1373 (Fed. Cir. 2015) ............................................................... 12

*Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States,*
   48 CIT __, Slip Op. 2024-56 (May 8, 2024) ........................................... 20

*Cleo Inc. v. United States,*
   501 F.3d 1291 (Fed. Cir. 2007) ............................................................... 10

*Consol. Edison Co. of N.Y. v. NLRB,*
   305 U.S. 197 (1938) ........................................................................... 10, 18

*Consolo v. Fed. Mar. Comm'n,*
   383 U.S. 607 (1966) ................................................................................. 10

*Downhole Pipe & Equip., L.P, v. United States,*
   776 F.3d 1369 (Fed. Cir. 2015) ............................................................... 18

*Matra Americas, LLC v. United States,*
   681 F. Supp. 3d 1339 (Ct. Int'l Tr. 2024) ............................................... 17

*Micron Tech., Inc. v. United States,*
   243 F.3d 1301 (Fed. Cir. 2001) ........................................................ passim

*Ningbo Dafa Chem. Fiber Co. v. United States,*
   580 F.3d 1247 (Fed. Cir. 2009) ............................................................... 10

*NTN Bearing Corp. of America v. United States,*
   248 F. Supp. 2d 1256 (Ct. Int'l Trade 2003) ..................................... 13, 19

*Sigma Corp. v. United States,*
   117 F.3d 1401 (Fed. Cir. 1997) ............................................................... 23

*Suzano S.A. v. United States,*
   633 F. Supp. 3d 1232 (Ct. Intl. Trade 2023) ........................................... 17

*Timken Co. v. United States,*
   354 F.3d 1334 (Fed. Cir. 2004) ............................................................... 11

*Torrington Co. v. United States*,
    68 F.3d 1347 (Fed. Cir. 1995) .......................................................................... 11

*U.S. Steel Corp. v. United States*,
    621 F.3d 1351 (Fed. Cir. 2010) ........................................................................ 11

*United States v. Eurodif S.A.*,
    555 U.S. 305 (2009) ......................................................................................... 10

*United States v. Koehler Oberkirch GmbH*,
    728 F. Supp. 3d 1322 (Ct. Intl. Trade 2024), 731 F. Supp. 3d 1377 (Ct. Intl. Trade 2024)........ 5

*Wheatland Tube Co. v. United States*,
    495 F.3d 1355 (Fed. Cir. 2007) ........................................................................ 12

*Wheatland Tube Co. v, United States*,
    161 F.3d 1365 (Fed. Cir. 1998) ........................................................................ 17

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) .......................................................................... 10, 23

19 U.S.C. § 1675(a)(1) ................................................................................... 11

19 U.S.C. § 1677(25) ................................................................................. passim

19 U.S.C. § 1677(35)(A) ................................................................................. 11

19 U.S.C. § 1677a(b) ..................................................................................... 11

19 U.S.C. § 1677a(c) ..................................................................................... 12

19 U.S.C. § 1677a(c)(2) ............................................................................... 11, 12

19 U.S.C. § 1677a(c)(2)(A) ............................................................................... 12

19 U.S.C. § 1677a(d) ..................................................................................... 20

19 U.S.C. § 1677a(d)(1) .............................................................................. passim

19 U.S.C. § 1677a(d)(1)(D) .......................................................................... passim

19 U.S.C. § 1677a(f) ..................................................................................... 20

19 U.S.C. § 1677b(a)(1)(B)(i) ............................................................................. 7

19 U.S.C. § 1677b(a)(6) .................................................................................. 12

19 U.S.C. § 1677b(a)(6)(C) ............................................................................... 23

19 U.S.C. § 1677b(a)(6)(C)(iii) ................................................................... 15

19 U.S.C. § 1677b(b)(1) ........................................................................... 7, 8

19 U.S.C. § 1677b(b)(3) ............................................................................. 10

19 U.S.C. § 1677(d)(1) .............................................................................. 13

19 U.S.C. § 1677f-1(c)(1) .......................................................................... 11

**RULES**

Rule 56.2 ................................................................................................. 1, 2

**REGULATIONS**

19 C.F.R. § 351.401(f) .................................................................................. 3

19 C.F.R. § 351.402 ................................................................................... 15

19 C.F.R. § 351.402(b) ....................................................................... passim

19 C.F.R. § 351.402(f)(1)(i) ....................................................................... 12

**FEDERAL REGISTER NOTICES**

*Antidumping Duties; Countervailing Duties*,
    62 Fed. Reg. 27,296 (Dep't of Commerce, May 19, 1997) ...................... 15

*Lightweight Thermal Paper from Germany and the People's Republic of China*,
    73 Fed. Reg. 70,959 (Dep't of Commerce, Nov. 24, 2008) ................... 5, 8

*Certain Frozen Warmwater Shrimp from India: Final Results of Antidumping Duty
Administrative Review, Partial Rescission, and Final No Shipment Determination*,
    76 Fed. Reg. 41,203 (Dep't of Commerce, July 13, 2011) ...................... 12

*Lightweight Thermal Paper From the People's Republic of China and Germany:
Continuation of the Antidumping and Countervailing Duty Orders on China, Revocation of the
Antidumping Duty Order on Germany*,
    80 Fed. Reg. 5,083 (Dep't Commerce, Jan. 30, 2015) ........................ 5, 14

*Thermal Paper From Germany: Final Affirmative Determination of Sales at Less Than Fair
Value and Final Affirmative Determination of Critical Circumstances, in Part*,
    86 Fed. Reg. 54,152 (Dep't of Commerce, Sept. 30, 2021) ...................... 5

*Thermal Paper from Germany, Japan, the Republic of Korea, and Spain: Antidumping Duty
Orders*,
    86 Fed. Reg. 66,284 (Dep't of Commerce, Nov. 22, 2021) ...................... 2

*Initiation Notice*,
  88 Fed. Reg. 50 (Dep't of Commerce, Jan. 3, 2023) ..................................................... 3

*Initiation Notice*,
  88 Fed. Reg. 15,642 (Dep't of Commerce, Mar. 14, 2023) ....................................... 3

*Thermal Paper from Germany: Preliminary Results of Antidumping Duty Administrative Review; 2021–2022*,
  88 Fed. Reg. 83,397 (Dep't of Commerce, Nov. 29, 2023) .................................... 3, 7

*Thermal Paper From Germany: Final Results of Antidumping Duty Administrative Review; 2021–2022*,
  89 Fed. Reg. 47,517 (Dep't of Commerce, June 3, 2024) ...................................... 2, 8

*Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review;2021-2022*,
  89 Fed. Reg. 48,889 (Dep't of Commerce, June 10, 2024), ................................... 19

## LEGISLATIVE HISTORY

H.R. Doc. No. 103-316, at 822 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4163 (SAA) ...... 11

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____
)
DOMTAR CORPORATION,                      )
                                         )
                    Plaintiff,           )
                                         )
         v.                              )    Court No. 24-00113
                                         )
UNITED STATES,                           )    PUBLIC VERSION
                                         )
                    Defendant,           )    BPI removed from page 6
         and                             )
                                         )
KOEHLER PAPER SE,                        )
MATRA AMERICAS LLC and,                  )
MATRA ATLANTIC GmbH,                     )
                                         )
                    Defendant-Intervenors. )
                                         )
_____)

**DEFENDANT'S RESPONSE TO PLAINTFF'S RULE 56.2
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully responds to the motion for judgment on the agency

record filed by plaintiff, Domtar Corporation (Domtar).  Domtar challenges the Department of

Commerce's final results in the first administrative review of the antidumping duty order on

thermal paper from the Federal Republic of Germany (Germany), disputing Commerce's

treatment of interest accrued on unpaid duties incurred pursuant to a revoked antidumping order.

Commerce reasonably included the interest in Koehler's cost of production rather than treating it

as an indirect selling expense associated with selling subject merchandise.  Because Commerce's

final results are lawful and supported by substantial evidence, we respectfully request that the

Court deny Domtar's motion and enter judgment for the United States.

**STATEMENT PURSUANT TO RULE 56.2**

**I.    The Administrative Determination Under Review**

Domtar challenges Commerce's final results of the first administrative review of the antidumping duty order on thermal paper from Germany. *See Thermal Paper From Germany: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 47,517 (Dep't of Commerce, June 3, 2024) (*Final Results*) (P.R. 140), and the accompanying Issues and Decision Memorandum (IDM) (May 24, 2024) (P.R. 135).  The period of review is May 12, 2021, through October 31, 2022.  IDM at 1.  The review covers one producer and/or exporter of the subject merchandise, Koehler Paper SE and Koehler Kehl GmbH (collectively, Koehler). *See* IDM at 1.

**II.    Issue Presented For Review**

The price used to establish constructed export price shall be reduced by (among other things) indirect selling expenses incurred in selling the subject merchandise to an unaffiliated purchaser.  *See* 19 U.S.C. § 1677a(d)(1)(D); 19 C.F.R. § 351.402(b).  The issue is whether Commerce's determination not to deduct certain interest expenses as indirect selling expenses was lawful and supported by substantial evidence, when the interest accrued on unpaid duties imposed on Koehler pursuant to a revoked antidumping duty order.

**STATEMENT OF FACTS**

**I.    Commerce Initiates The First Administrative Review Of The 2021 Antidumping Duty Order On Thermal Paper From Germany**

On November 22, 2021, Commerce issued an antidumping duty order on thermal paper from Germany.  *See Thermal Paper from Germany, Japan, the Republic of Korea, and Spain: Antidumping Duty Orders*, 86 Fed. Reg. 66,284 (Dep't of Commerce, Nov. 22, 2021) (*2021 Order*).  After receiving timely requests for review of the *2021 Order*, Commerce initiated an

administrative review of multiple companies, including Koehler Oberkirch GmbH (Koehler

Oberkirch), Koehler Paper SE, Matra Atlantic GmbH (Matra Atlantic), and Papierfabrik August

Koehler SE (Papierfabrik Koehler), on January 3, 2023.[1]  *See Initiation Notice*, 88 Fed. Reg. 50

(Dep't of Commerce, Jan. 3, 2023) (P.R. 10).

Despite initiating the review with respect to four companies, Commerce later determined

that the review covered only *one* producer and/or exporter of the subject merchandise: Koehler.[2]

IDM at 1.  None of the remaining companies subject to review were producers or exporters of

the subject merchandise.  Matra Atlantic was "not a producer of subject thermal paper in

Germany," Matra Letter at 1, 3 & n.3 (Feb. 24, 2023) (P.R. 29), and instead (through the

subsidiary Matra Americas, LLC) was the exclusive distributor of Koehler-produced subject

merchandise in the United States during the relevant period, *id.* at 2; Koehler Letter at 2 (Mar.

13, 2023) (P.R. 42, C.R. 20) (citations omitted).  Additionally, Papierfabrik Koehler had

"changed its name to Koehler Oberkirch on November 9, 2021"—before the period of review—

and "Koehler Oberkirch was not involved in the production or sale of subject merchandise

during the {period of review}."  *Thermal Paper from Germany: Preliminary Results of*

*Antidumping Duty Administrative Review; 2021–2022*, 88 Fed. Reg. 83,397 (Dep't of

Commerce, Nov. 29, 2023) (*Preliminary Results*) (P.R. 114), and accompanying Preliminary

Decision Memorandum (PDM) at 3 & n.17 (Nov. 21, 2023) (P.R. 104).  There was "no evidence

---

[1]  Commerce also inadvertently initiated review of Matra Americas LLC, *see* Initiation
Notice (P.R. 10), but later corrected the error, clarifying that "Matra Americas LLC is not subject
to the review."  *See* Respondent Selection Mem. at 2 n.6 (P.R. 23); *see also Initiation Notice*, 88
Fed. Reg. 15,642, 15,649 n.5 (Dep't of Commerce, Mar. 14, 2023) (P.R. 48).

[2]  Commerce found that affiliated companies Koehler Paper SE and Koehler Kehl GmbH
should be treated as a single entity.  Preliminary Decision Memorandum at 4-5 (Nov. 21, 2023)
(P.R. 104) (citing, *e.g.*, 19 C.F.R. § 351.401(f)).

that Koehler Oberkirch or Papierfabrik Koehler were involved in the production or sale of subject merchandise during the {period of review}." PDM at 3 n.17.

## II.    Commerce Requests Information From Koehler Regarding Its Interest On Unpaid Duties Pursuant To A Prior 2008 Antidumping Duty Order

After initiation, Commerce selected Koehler and Matra Atlantic as mandatory respondents, and issued initial questionnaires to both entities. Respondent Selection Mem. at 5 (Feb. 7, 2023) (P.R. 23); Respondent Selection Update (Feb. 23, 2023) (P.R. 27); Koehler Initial Questionnaire at 1 (Feb. 8, 2023) (P.R. 24); Matra Initial Questionnaire at 1 (Feb. 24, 2023) (P.R. 28).[3] The Section D questionnaire requested (among other things) information "about the cost of production of merchandise sold in the foreign market," relevant to Commerce's determination of normal value. Initial Questionnaire to Koehler at G-2 (P.R. 24). Among other components of the cost of production, Commerce required Koehler to report its general and administrative and interest expenses during the relevant period. *See id.* at D-15.

In response, Koehler reported "the weighted average per-unit" cost of production for each thermal paper control number produced by Koehler during the period of review, "regardless of market destination." Koehler Section B, D Questionnaire Response at D-2 (P.R. 50, C.R. 78). Included in this response were Koehler's general and administrative expense ratio and calculation of net interest. *Id.* at D-41-42, Ex. D-19, D-20 (P.R. 50, C.R. 78, C.R. 80).

On April 14, 2023, Domtar provided comments on Koehler's initial questionnaire response. Petitioner Cmts. on Initial Questionnaire Response (IQR) at 10 (Apr. 14, 2023) (P.R.

---

[3] In light of the two entities' close supplier relationship, Commerce allowed Matra Atlantic and Koehler to respond to specified sections of the questionnaire, rather than requiring each entity to respond to the entire questionnaire. Koehler Letter at 1 (Mar. 17, 2023) (P.R. 46); Matra Letter at 1 (Mar. 17, 2023) (P.R. 47). As relevant to this case, Commerce required Koehler to respond "to section D." Koehler Letter at 1 (P.R. 46).

52, C.R. 81).  Domtar pointed out that during the underlying investigation of the *2021 Order*,

"Commerce found that Koehler still had not paid antidumping duties assessed years ago under

the previous {antidumping duty} order on lightweight thermal paper."  *Id.* (citing *Thermal Paper*

*From Germany: Final Affirmative Determination of Sales at Less Than Fair Value and Final*

*Affirmative Determination of Critical Circumstances, in Part*, 86 Fed. Reg. 54,152 (Dep't of

Commerce, Sept. 30, 2021) (*Final Determination*), and accompanying IDM at Comment 5 (Sept.

24, 2021) (INV IDM)).

Specifically, Koehler owed duties pursuant to a prior antidumping duty order.  *See*

*Lightweight Thermal Paper from Germany and the People's Republic of China (China)*, 73 Fed.

Reg. 70,959 (Dep't of Commerce, Nov. 24, 2008) (*2008 Order*)).  The *2008 Order* was revoked

in 2015, after a sunset review.  *See Lightweight Thermal Paper From China and Germany:*

*Continuation of the Antidumping and Countervailing Duty Orders on China, Revocation of the*

*Antidumping Duty Order on Germany*, 80 Fed. Reg. 5,083 (Dep't Commerce, Jan. 30, 2015)

(*Revocation*).[4]  As Commerce explained in the investigation, "CBP has assessed interest on the

outstanding {antidumping duty} liability" arising from the *2008 Order*.  Pet'r Comments on IQR

at 10-11 (P.R. 52, C.R. 81) (quoting INV IDM at Comment 5).  Commerce stated that "{t}he

interest owed on these assessed duties . . . is a result of Koehler's own actions, *i.e.*, its refusal to

pay these duties."  *Id.* (quoting INV IDM at Comment 5).  Thus, in the investigation, Commerce

added the interest expense to "Koehler's consolidated total financial interest expense, . . . to

recalculate Koehler's financial interest expense ratio."  *Id.* (quoting INV IDM at Comment 5).

---

[4]  The United States has filed a separate case against Koehler Oberkirch and Koehler
Paper SE to recover the unpaid duties and interest.  *See United States v. Koehler Oberkirch
GmbH*, 728 F. Supp. 3d 1322, 1324 (Ct. Intl. Trade 2024) (authorizing service on defendants),
*motion to certify appeal denied*,731 F. Supp. 3d 1377 (Ct. Intl. Trade 2024).

In comments on Koehler's questionnaire response, Domtar argued that the respondents had [█████████████████████████████████████████████████████████████ █████████████████]—"either as part of U.S. indirect selling expenses, or as a component of interest expense."  Petitioner Cmts. on IQR at 11 (Apr. 14, 2023) (P.R. 52, C.R. 81) (citing Matra Section C Response at Ex. C-22 (C.R. 71, 72); Koehler's Section D Response at Ex. D-20 (P.R. 50, C.R. 80)).  Domtar argued that "Commerce should collect certain additional information from Koehler" regarding its interest expenses.  *Id.* at 12.  In response, Koehler highlighted that Commerce had included such interest in "Koehler's consolidated total financial interest expense" in the underlying investigation, and argued that Commerce "should continue to apply any such adjustments in the same manner as it did in the Investigation."  Koehler Rebuttal Comments at 2-3 (May 24, 2023) (P.R. 60) (citing INV IDM at Comment 5).

On July 25, 2023, Commerce issued a supplemental Section D questionnaire requesting additional information from Koehler regarding [████████████████████████████████].  *See* Supp. Section D Questionnaire at 10-11 (P.R. 63, C.R. 87).  Commerce asked whether Koehler's audited financial statements included "[██████████████████████████ ████]," and, if not, requested that Koehler provide a schedule showing the total amount of [██████████████████████████████]" during the relevant period.  *Id.*

Koehler responded that its financial statements during the relevant period did not include [██████████████████████].  Koehler Supp. Section D Questionnaire Response at 26-27 (P.R. 69, C.R. 115); *see also* Exhibit SD-19a (P.R. 70, C.R. 126).  In response to Commerce's request for such information, Koehler provided Exhibit SD-19a with a schedule reflecting the requested interest expenses on the [████████████].  Koehler Supp. Section D

Questionnaire Response at 26-27 (P.R. 69, C.R. 115); *see also* Exhibit SD-19a (P.R. 70, C.R. 126).

On October 26, 2023, Domtar submitted pre-preliminary comments arguing (among other things) that "rather than including this amount within the financial expense component of {cost of production}, Commerce should treat {it} as a deduction to U.S. price." Pre-Preliminary Comments at 8-9 (Oct. 26, 2023) (P.R. 95, C.R. 177); *see also id.* (citing 19 U.S.C. § 1677a(d)(1)(D); 19 C.F.R. § 351.402(b)). Koehler responded by repeating that Commerce should treat the accrued interest in the same manner that it had in the investigation—namely, as an adjustment to the financial interest expense ratio. Koehler Pre-Prelim. Cmts at 6-7 (Nov. 10, 2023) (P.R. 100, C.R. 182).

## II.    In The Preliminary Results, Commerce Adjusts Koehler's Reported Cost Of Production To Include Interest Accrued On Unpaid Antidumping Duties From The Prior 2008 Antidumping Duty Order

On November 29, 2023, Commerce published the *Preliminary Results* and invited interested parties to comment. *See Preliminary Results*, 88 Fed. Reg. at 83,397 (P.R. 114). Commerce preliminarily calculated a weighted-average dumping margin for Koehler of 0.75 percent. *See id.* at 83,398.

In determining whether Koehler's sales of subject merchandise were made at less than normal value, Commerce used Koehler's home market sales in Germany as the basis for calculating normal value. PDM at 10 (citing 19 U.S.C. § 1677b(a)(1)(B)(i)). Applying the sales-below-cost test, Commerce excluded Koehler's home market sales made "at prices less than the {cost of production.}" PDM at 12-13 (citing 19 U.S.C. § 1677b(b)(1)) (also finding these sales did not provide for the "recovery of costs within a reasonable period of time").

As part of the interest expenses incorporated in the cost of production, Commerce included interest costs associated with the unpaid duties on the *2008 Order*. PDM at 12; Koehler

Sales Calc. Mem. at 2 (Nov. 21, 2023) (P.R. 107, C.R. 187) (citing *2008 Order*, 73 Fed. Reg. 70,959); *see also* Att. 3 (C.R. 188).  After excluding the resulting below-cost sales, Commerce used Koehler's remaining home market sales as the basis for determining normal value.  PDM at 12-13 (citing 19 U.S.C. § 1677b(b)(1)).

After Commerce issued the preliminary results, Domtar filed a case brief challenging (among other things) the treatment of Koehler's interest expenses on the unpaid antidumping duties.  Domtar Case Br. at 6-9 (Apr. 26, 2024) (P.R. 126, C.R. 263).  Domtar again argued that "rather than including this amount within the financial component of {cost of production}, Commerce should treat this as a deduction to U.S. price."  *Id.* at 7.  Domtar argued that "the unpaid interest on Koehler's antidumping duty liability related specifically to the company's U.S. thermal paper sales and to activities occurring in the United States, and thus, it should be treated as a U.S. indirect selling expense{.}"  *Id.* at 8 (citing 19 U.S.C. § 1677a(d)(1)(D); 19 C.F.R. § 351.402(b)).

Koehler responded that treating the accrued interest on unpaid antidumping duties as "selling expenses is an incorrect interpretation of the statute{.}"  Rebuttal at 1-2 (May 1, 2024) (P.R. 128, C.R. 264); *see also id.* (citing 19 U.S.C. § 1677a(d)(1)(D)).  According to Koehler, "these interest expenses are not directly related to sales of subject merchandise as required by statute."  *Id.* at 2.

### III.    In The Final Results, Commerce Continues To Treat Interest Expenses On Unpaid Duties As A Component Of Koehler's Cost Of Production

On June 3, 2024, Commerce published the *Final Results*, adjusting Koehler's weighted-average dumping margin to 0.76 percent.  *Final Results*, 89 Fed. Reg. at 47,517.  As relevant to this case, Commerce continued to treat Koehler's accrued interest on unpaid antidumping duties as part of Koehler's financial expenses in the cost of production—consistent with Commerce's

decision in the underlying investigation.  *See* IDM at 6–7 (citing INV IDM at Comment 5).

Thus, Commerce continued "to treat the interest accrued during the {period of review} on unpaid

antidumping duties from {*2008 Order*} as part of Koehler's financial expenses" included in the

cost of production.  IDM at 7.

Commerce rejected Domtar's argument that the disputed interest expenses qualified as

indirect selling expenses that shall be deducted from constructed export price.  IDM at 7.

Contrary to Domtar's argument, Commerce determined that Koehler's interest expenses "do not

relate directly to sales of *subject merchandise* to an unaffiliated purchaser{.}"  IDM at 7

(emphasis added); *see also* 19 U.S.C. § 1677a(d)(1)(D); 19 C.F.R. § 351.402(b).  As Commerce

explained, the interest expenses were not incurred on subject merchandise "under the current

order on thermal paper from Germany," and instead "related to unpaid antidumping duties on the

{*2008 Order*}, an order that was subsequently revoked."  IDM at 7.

This suit followed.

## SUMMARY OF THE ARGUMENT

Commerce's determination to include Koehler's interest expenses on unpaid duties as

part of the cost of production—and not a selling expense incurred in selling subject

merchandise—is lawful and supported by substantial evidence.  The applicable statutory

provision allows adjustments to constructed export price for indirect selling expenses "generally

incurred . . . in selling the subject merchandise{.}"  19 U.S.C. § 1677a(d)(1) (also covering such

expenses incurred in selling subject merchandise "to which value has been added").  The

disputed interest expenses were not incurred in selling merchandise subject to the current *2021*

*Order*.  Instead, the unpaid antidumping duties (and resulting interest expenses) were incurred

pursuant to a prior *2008 Order* that was revoked in 2015.  Koehler accrued these interest

expenses regardless of whether it made U.S. sales of subject merchandise to an unaffiliated purchaser during the period of review. Thus, Commerce reasonably treated the expenses as part of Koehler's interest ratio in the cost of production, rather than deducting the costs from the constructed export price.

## ARGUMENT

### I.    Standard of Review

The Court upholds Commerce determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law{.}" 19 U.S.C. § 1516a(b)(1)(B)(i). Commerce's factual findings "are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) (citation omitted). "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009). Even if the Court may draw two inconsistent conclusions from the evidence contained in the record, doing so "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted). An agency decision may not be overturned "simply because the reviewing court would have reached a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291, 1296 (Fed. Cir. 2007) (citations omitted).

### II.    Commerce's Determination That Koehler's Accrued Interest On Unpaid Antidumping Duties Should Not Be Attributed To Constructed Export Price Is Lawful And Supported By Substantial Evidence

Commerce reasonably treated Koehler's interest expenses on unpaid duties as part of Koehler's cost of production—not as an indirect selling expense deducted from constructed export price. IDM at 7; PDM at 12; *see* 19 U.S.C. § 1677b(b)(3); 19 U.S.C. § 1677a(d)(1)(D).

10

A.      Background Regarding Adjustments To Constructed Export Price

After issuing an antidumping duty order, Commerce conducts annual administrative

reviews to determine the "dumping margin" for each entry subject to the review.  19 U.S.C.

§ 1675(a)(1), (2)(A)(ii).  "For every administrative review, Commerce typically must 'determine

the individual weighted average dumping margin for each known exporter and producer of the

subject merchandise.'"  *ABB, Inc. v. United States*, 920 F.3d 811, 813 (Fed. Cir. 2019) (citing 19

U.S.C. § 1677f-1(c)(1)).  "The weighted average dumping margin reflects the amount by which

'normal value' (the price a producer charges in its home market) exceeds . . . 'export price' (the

price of the product in the United States) or 'constructed export price.'"  *Id.* (quoting *U.S. Steel*

*Corp. v. United States*, 621 F.3d 1351, 1353 (Fed. Cir. 2010); citing 19 U.S.C. § 1677(35)(A)).

Commerce generally uses a constructed export price instead of export price when "'the first sale

to an unaffiliated person is made by (or for the account of) the producer or exporter or by a seller

in the United States who is affiliated with the producer or exporter.'"  *U.S. Steel*, 621 F.3d at

1353 n.1 (citing Uruguay Round Agreements Act, Statement of Administrative Action, H.R.

Doc. No. 103-316, at 822 (1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4163 (SAA)); 19 U.S.C.

§ 1677a(b)).

There are multiple "explicit statutory adjustments" to "help make a "fair, 'apples-to-

apples' comparison' between normal value and {export price} or {constructed export price}."

*Timken Co. v. United States*, 354 F.3d 1334, 1344 (Fed. Cir. 2004) (quoting *Micron Tech., Inc. v.*

*United States,* 243 F.3d 1301, 1313 (Fed. Cir. 2001); *Torrington Co. v. United States,* 68 F.3d

1347, 1352 (Fed. Cir. 1995)).  For example, pursuant to 19 U.S.C. § 1677a(c)(2), export price

and constructed export price shall be reduced by amounts attributable to any additional costs,

charges, expenses, or United States import duties incident to bringing the subject merchandise to

the place of delivery in the United States.  19 U.S.C. § 1677a(c)(2)(A).  "This includes, for

example, freight expenses, U.S. customs duties, and port charges."  *Apex Exports v. United*

*States*, 777 F.3d 1373, 1375 (Fed. Cir. 2015) (citing 19 U.S.C. § 1677a(c)(2)) (other citations

omitted).  Normal value "is subject to similar adjustments."  *Id.* at 1375 (citing 19 U.S.C.

§ 1677b(a)(6)).

　　　In applying section 1677a(c)(2), however, Commerce's "longstanding practice is not to

deduct antidumping duties as costs, expenses or import duties because antidumping duties are

neither selling expenses nor normal customs duties."  *Certain Frozen Warmwater Shrimp from*

*India: Final Results of Antidumping Duty Administrative Review, Partial Rescission, and Final*

*No Shipment Determination*, 76 Fed. Reg. 41,203 (Dep't of Commerce, July 13, 2011), and

accompanying IDM at 13 (July 5, 2011) (citation omitted).  "{A}ntidumping duties are neither

'costs, charges, or expenses' nor are they 'import duties'" within the meaning of 19 U.S.C.

§ 1677a(c)(2)(A).  *See id.*[5]  This practice is consistent with Commerce's "longstanding practice

of treating antidumping duties as special, and not deducting them to calculate {export price}."

*Apex Exports*, 777 F.3d at 1379-80 (citing, *e.g.*, *Wheatland Tube Co. v. United States*, 495 F.3d

1355, 1362–63 (Fed. Cir. 2007); *Ad Hoc Shrimp Trade Action Comm. v. United States*, 925

F.Supp.2d 1367, 1373 n.19 (Ct. Int'l Trade 2013)).

　　　Even after making the adjustments in section 1677a(c), Commerce shall further adjust

constructed export price to make it comparable to the export price, by deducting certain selling

expenses—including indirect selling expenses—incurred in selling the subject merchandise.  *See*

*Micron Tech.,* 243 F.3d at 1313-1314; 19 U.S.C. § 1677a(d)(1).

---

[5]  *See also id.* (explaining that 19 C.F.R. § 351.402(f)(1)(i) did not apply because "the
respondents are not reimbursing or paying the assessed duties on behalf of the importer").

For purposes of this section, the price used to establish constructed export price shall also be reduced by--

(1) *the amount of any of the following expenses* generally *incurred* by or for the account of the producer or exporter, or the affiliated seller in the United States, *in selling the subject merchandise* (or subject merchandise to which value has been added)--

    (A) commissions for selling the subject merchandise in the United States;

    (B) expenses that result from, and bear a direct relationship to, the sale, such as credit expenses, guarantees and warranties;

    (C) any selling expenses that the seller pays on behalf of the purchaser; and

    (D) any selling expenses not deducted under subparagraph (A), (B), or (C){.}

19 U.S.C. § 1677a(d)(1) (emphases added).

In making adjustments pursuant to section 1677(d)(1), Commerce "logically must deduct only those expenses incurred solely in {constructed export price (or CEP)} transactions{.}" *Micron Tech..*, 243 F.3d at 1313. In other words, Commerce must deduct "only those expenses associated with the sale of subject merchandise to an unaffiliated purchaser in the United States by a party affiliated with the foreign producer or exporter." *Id.*

Moreover, Commerce has declined to deduct interest expenses incurred from financing antidumping duty cash deposits as indirect selling expenses pursuant to 19 U.S.C. § 1677a(d)(1). *See, e.g.*, *NTN Bearing Corp. of America v. United States*, 248 F. Supp. 2d 1256, 1269 (Ct. Int'l Trade 2003) (affirming Commerce's denial of an adjustment to constructed export price pursuant to 19 U.S.C. § 1677a(d)(1) for interest incurred in financing antidumping duty cash deposits).

    B.    Substantial Evidence Supports Commerce's Finding That The Disputed Interest Expenses Are Not Expenses Incurred In Selling The Subject Merchandise To An Unaffiliated Purchaser

Commerce's determination not to treat interest accrued on Koehler's unpaid antidumping duties as an indirect selling expense to be deducted from constructed export price is lawful and supported by substantial evidence. By statute, "the price used to establish constructed export price shall . . . be reduced by" the amount of certain expenses (including indirect selling

13

expenses) incurred "*in selling the subject merchandise*."  19 U.S.C. § 1677a(d)(1) (emphasis

added).  Such expenses are "associated with the more advanced level of trade represented by the

{constructed export price} starting price, i.e., the expenses associated with the sale to the *first*

*non-affiliated purchaser in the United States*."  *Micron Tech.*, 243 F.3d at 1313–14 (emphasis

added).  Substantial evidence supports Commerce's finding that Koehler's interest expenses on

unpaid duties were not incurred in selling the subject merchandise to an unaffiliated purchaser.

*See* IDM at 6-7.

As relevant here, the term "subject merchandise" means "the class or kind of

merchandise that is within the scope of an investigation, *a review*, . . . {or} an order under this

subtitle{.}"  19 U.S.C. § 1677(25) (emphasis added).  As Commerce explained, Koehler's

accrued interest on unpaid antidumping duties was not incurred on merchandise within the scope

of this review or the current *2021 Order.  See* IDM at 7.  Instead, the interest expenses "are

related to unpaid antidumping duties on the {*2008 Order*}, an order which was subsequently

revoked."  IDM at 7; *see also Revocation*, 80 Fed. Reg. 5083.

Commerce also discussed the regulation implementing section 1677a(d)(1)(D), 19 C.F.R.

§ 351.402(b), determining that the regulation does not support Domtar's request to treat the

disputed interest as an indirect selling expense deducted from the constructed export price.  IDM

at 7.  Section 351.402(b) provides that Commerce "will make adjustments for expenses

associated with commercial activities in the United States that relate to the sale to an unaffiliated

purchaser, no matter where or when paid."  19 C.F.R. § 351.402(b).[6]  As explained in the

---

[6]   Section 351.402(b) further provides that Commerce "will not make an adjustment for
any expense that is related solely to the sale to an affiliated importer in the United States,"
although Commerce "may make an adjustment to normal value for such expenses under {19
U.S.C. § 1677b(a)(6)(C)(iii)}."  Section 1677b(a)(6)(C)(iii), in turn, provides for adjustments to

regulatory preamble, this language does not allow deducting "*all* expenses incurred in connection with the {constructed export price} sale."  *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,351 (Dep't of Commerce, May 19, 1997) (citing 19 U.S.C. § 1677a(d)(1)(D)) (emphasis added).  Instead, the regulatory language was designed "to distinguish between selling expenses incurred on the sale to the unaffiliated customer, which may be deducted under {section 1677a(d)(1)}, and those associated with the sale to the affiliated customer in the United States, which may not be deducted."  *Id.*

Thus, the requirement that an expense "relate to the sale to an unaffiliated purchaser" is "{c}ritical to an adjustment" pursuant to section 351.402(b)."  IDM at 7 (quoting 19 C.F.R. § 351.402(b)).  As Commerce determined, however, the disputed interest expenses in this case were not "associated with commercial activities in the United States *that relate to the sale to an unaffiliated purchaser*."  19 C.F.R. § 351.402(b) (emphasis added); *see also* IDM at 7.  Although Domtar argued that the disputed interest expenses "are related to Koehler's sales of thermal paper to U.S. customers," Commerce instead found that those expenses "are related to unpaid antidumping duties on the {*2008 Order*}, an order which was subsequently revoked."  IDM at 7.  "Thus, these expenses do not relate directly to sales of subject merchandise to an unaffiliated purchaser under the current order on thermal paper from Germany."  IDM at 7.

Thus, the case aligns with *Micron Technology, Inc. v. United States*, in which the Federal Circuit sustained Commerce's determination that certain expenses did not qualify as expenses "related to the use of affiliated United States entities."  243 F.3d at 1313.  In *Micron Technology*, the disputed expenses included "sales office rents in {the home country}, salesmens' salaries in

---

the starting price used to calculate normal value to account to account for "other differences in the circumstances of sale."  19 U.S.C. § 1677b(a)(6)(C)(iii).

{the home country}, and certain inventory carrying costs"—all of which would be incurred by the respondent regardless of whether it distributed products through "an affiliated distributor in the United States." *Id.* Indeed, "these indirect selling expenses are no more of an expense related to the use of affiliated United States entities than the raw material costs incurred during the production of the merchandise." *Id.* at 1314. The Federal Circuit thus sustained Commerce's determination that such expenses should not be deducted pursuant to 19 U.S.C. § 1677a(d)(1). *See id.* at 1314.

Like the expenses in *Micron Technology*, the disputed interest expenses in this case were not associated with the sale of subject merchandise to the first non-affiliated purchaser in the United States. Indeed, the interest expenses were not related to sales of the subject merchandise at all. IDM at 6-7. Koehler's unpaid antidumping duty liability will continue to accrue interest unless or until paid, regardless of whether Koehler sells merchandise in the United States that is subject to the current *2021 Order*. *See* IDM at 6-7 (describing the background regarding the disputed expenses). Accordingly, the interest expenses accruing during the period of review were not incurred on sales of subject merchandise—much less "related to the use of affiliated United States entities" in making such sales. *See Micron Tech.,* 243 F.3d at 1313.

III.    Domtar's Arguments Are Unpersuasive

As discussed below, Domtar presents no valid basis for disrupting Commerce's determination with respect to the unpaid interest expenses. As an initial matter, Domtar cites the Court's prior decision reviewing the final determination in the underlying investigation, explaining that the Court "remanded the matter 'to allow Commerce to reconsider its position or supply an explanation.'" Domtar Br. at 6 (quoting *Matra Americas, LLC v. United States*, 681 F. Supp. 3d 1339, 1380-82 (Ct. Int'l Tr. 2024)). In *Matra Americas*, the Court was concerned that

Commerce had failed to provide an explanation for its decision to treat accrued interest as part of the cost of production instead of an indirect selling expense, stating that the agency's path was not "reasonably discernible" on this issue. *Matra Americas, LLC*, 681 F. Supp. 3d at 1382 (quoting *Wheatland Tube*, 161 F.3d at 1369). As Domtar concedes, however, Commerce "did provide an explanation" for its calculation regarding the disputed interest expenses in the final results. *See* Domtar Br. at 7 (citation omitted). None of Domtar's arguments provides a basis for second-guessing Commerce's explanation for declining to deduct the accrued interest as an indirect selling expense pursuant to 19 U.S.C. § 1677a(d)(1)(D). *See* IDM at 6-7.

For example, Domtar challenges Commerce's determination that the disputed interest expenses did not relate to U.S. sales of subject merchandise. *See* Domtar Br. at 7-8, 10. This is ultimately a factual determination reviewed under the deferential substantial evidence standard. *Cf.*, *Suzano S.A. v. United States*, 633 F. Supp. 3d 1232, 1237 (Ct. Intl. Trade 2023).[7] According to Domtar, "{t}he interest on Koehler's unpaid antidumping duty liability related specifically to the company's U.S. thermal paper sales and to activities occurring in the United States{.}" Domtar Br. at 7-8. This is nothing more than *ipse dixit*. Commerce explained that the interest expenses related to a *revoked* antidumping duty order and did not directly relate to U.S. sales subject to the current *2021 Order*. IDM at 7. Based on those facts, a "reasonable mind" could conclude that the accrued interest was not incurred in selling Koehler's United States *sales of subject merchandise* under the current *2021 Order*, as required by section 1677a(d)(1)(D). *See*

---

[7] Indeed, in reviewing Commerce's determination that certain losses were not "investment costs" and instead should be included in the costs of production, the Court recognized that the question was "ultimately one of fact." *Suzano*, 633 F. Supp. 3d at 1235, 1237.

*Downhole Pipe & Equip., L.P, v. United States*, 776 F.3d 1369, 1374 (Fed. Cir. 2015) (quoting

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)).

Domtar further argues that Commerce's finding is "unreasonable" and that "both the

2008 and 2021 orders covered the same merchandise." Domtar Br. at 9-10. But the scope of the

*2008 Order* is not identical to the scope of the current *2021 Order*—with the two orders differing

with respect to the basis weight of the thermal paper. *See* INV IDM at 11; Domtar Br. at 10 n.1.

In any event, Domtar does not dispute that the unpaid antidumping duties resulting in the

disputed accrued interest were based on merchandise subject to the *2008 Order*—not the current

*2021 Order*. Thus, Commerce was on solid ground in determining that the antidumping duties

(and resulting accrued interest) were not incurred in selling *subject merchandise*, for purposes of

this review of the current *2021 Order*. *See* 19 U.S.C. § 1677(25) (defining subject merchandise).

Domtar also claims that "{t}he interest expenses at issue clearly arose from Koehler's

thermal paper sales into the United States." *See* Domtar Br. at 10. This ignores the key point

that the interest accrued on unpaid antidumping duties imposed on merchandise that was subject

to the *2008 Order*—which has been revoked. *See* IDM at 7. Thus, even leaving aside concerns

with deducting financial expenses associated with paying antidumping duties,[8] Commerce

reasonably determined that the disputed interest expenses failed the threshold requirement that

indirect selling expenses pursuant to 19 U.S.C. § 1677a(d)(1)(D) must be incurred in selling

*subject merchandise*. *See* IDM at 7; 19 U.S.C. § 1677a(d)(1) (governing expenses "generally

incurred . . . in selling the subject merchandise (or subject merchandise to which value has been

added)"). Because the merchandise to which the unpaid duties apply, and the interest expense on

---

[8] *See, e.g.*, *NTN Bearing Corp. of Am.*, 248 F. Supp. 2d at 1269 (affirming Commerce's
denial of an adjustment to constructed export price pursuant to 19 U.S.C. § 1677a(d)(1) for
interest incurred in financing antidumping duty cash deposits).

those unpaid duties, is not subject to the *2021 Order* or this review, *see* 19 U.S.C. § 1677(25), a reasonable person could agree with Commerce's finding that the interest was not incurred in selling subject merchandise, as required by 19 U.S.C. § 1677a(d)(1).  Nothing more is required for Commerce's determination to be supported by substantial evidence.

Domtar's legal contentions are no more persuasive.  Domtar correctly states that Commerce has treated certain interest expenses as indirect selling expenses, including in *Certain Aluminum Foil From the Republic of Türkiye*.  Domtar Br. at 8 (citing *Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty Administrative Review; 2021-2022*, 89 Fed. Reg. 48,889 (Dep't of Commerce, June 10, 2024), and accompanying IDM at Comment 4).  However, that example is inapposite.  In *Certain Aluminum Foil From the Republic of Türkiye*, Commerce made an adjustment pursuant to 19 U.S.C. § 1677a(d)(1)(D) for Kibar America's interest expenses when Kibar Americas was "exclusively a reseller, with no manufacturing operations of its own."  *Aluminum Foil From the Republic of Türkiye*, 89 Fed. Reg. 48,889, and accompanying IDM at Comment 4.  Thus, all of Kibar America's expenses "including interest expenses, are appropriately considered selling expenses."  *Id*.  "Further, as a U.S.-based sales affiliate that sold subject merchandise to unaffiliated U.S. customers, Kibar Americas incurred these interest expenses at issue in the United States in connection with economic activities occurring in the United States."  *Id.* (citation omitted).  Thus, in *Certain Aluminum Foil from Turkiye*, Commerce was evaluating selling activities related to the sale of subject merchandise to unaffiliated purchasers.  *See id.*  The example is plainly distinguishable from this case, in which Commerce found that the relevant interest expenses were related to a

revoked antidumping duty order, not the sale of merchandise to an unaffiliated purchaser in the United States.  *See* IDM at 7.[9]

Domtar further argues that "expenses may be treated as {indirect selling expenses} even if they are incurred by the producer or exporter located outside the United States."  Domtar Br. at 8 (citing *Assan Aluminyum Sanayi Ve Ticaret A.S. v. United States*, 48 CIT __, Slip Op. 2024-56 (May 8, 2024) at 30–33).  Domtar again focuses on the wrong issue.  Commerce did not deny the constructed export price adjustment in this case because the interest expenses were levied on Koehler and not on Matra Atlantic; instead, Commerce denied the adjustment because the interest expenses are not expenses incurred in selling subject merchandise to an unaffiliated purchaser in the United States.  *See* IDM at 7.  Again, Commerce determined that the expenses at issue are related to sales made under a separate (and revoked) antidumping duty order rather than to U.S. sales of subject merchandise to an unaffiliated purchaser.  IDM at 7.

Domtar next points to 19 C.F.R. § 351.402(b) as support for its argument that the accrued interest should be deducted from the constructed export price because it arose from Koehler's "commercial activities in the United States."  19 C.F.R. § 351.402(b); Domtar Br. at 8.  Yet, Domtar's argument ignores the rest of the regulation requiring that deducted expenses be "relate{d} to the sale to an unaffiliated purchaser."  19 C.F.R. § 351.402(b); IDM at 7 (internal quotation marks omitted).  As Commerce explained, the interest accrued on an unpaid

---

[9]  As in *Certain Aluminum Foil from Turkiye*, moreover, Commerce *did* make certain deductions that were related to selling the subject merchandise.  Specifically, pursuant to 19 U.S.C. § 1677a(d), Commerce deducted "selling expenses associated with economic activities occurring in the United States," including "direct selling expenses (*i.e.*, imputed credit expenses and warranty expenses)" and "indirect selling expenses (*i.e.*, inventory carrying costs and indirect selling expenses)."  PDM at 10 (citing 19 U.S.C. § 1677a(d)(1)).  Commerce also deducted constructed export price profit—calculated using the U.S. reseller Matra Atlantic's expenses and profit on sales in the United States.  PDM at 10 (citing 19 U.S.C. § 1677a(f)).

antidumping duty liability incurred on merchandise subject to the revoked *2008 Order*—and, thus, was not incurred on sales of U.S. sales to an unaffiliated purchaser subject to the *2021 Order*.  IDM at 7.

Domtar's importer-of-record argument also fails.  Domtar Br. at 8-9.  Domtar argues that Koehler served as the importer of record for sales that were considered in imposing the unpaid antidumping duties pursuant to the revoked *2008 Order*.  Thus, Koehler claims that the unpaid antidumping duties were "associated with commercial activities in the United States" and related to the "sale to an unaffiliated purchaser."  Domtar Br. at 8 (internal quotation marks omitted).  But at most, this shows only that unpaid antidumping duties were incurred on sales of merchandise subject to the *2008 Order*.  Merchandise subject to the *2008 Order* does not qualify as subject merchandise during the review of the current *2021 Order*.  *See* 19 U.S.C. § 1677(25) (defining subject merchandise); IDM at 7.  Thus, Koehler's importer-of-record argument reinforces the core point that the interest expenses related to the prior *2008 Order* and were not incurred on merchandise subject to the current *2021 Order.*  IDM at 7.

Domtar argues that "Commerce did not explain why this purported distinction was dispositive under the applicable statute and regulation."  Domtar Br. at 9.  But Commerce did explain its reasoning, highlighting the "{c}ritical" regulatory requirement for the adjustment to "relate to the sale to an unaffiliated purchaser."  IDM at 7 (citing 19 C.F.R. § 351.402(b)).  Moreover, Commerce made a determination that the disputed interest expenses were not incurred in selling "subject merchandise."  IDM at 7.  In light of that finding, the relevant expenses are not "incurred . . . *in selling the subject merchandise* (or subject merchandise to which value has been added)," as required by 19 U.S.C. § 1677a(d)(1) (emphasis added).

Overall, if accepted, Domtar's argument would mean that *any* financing expenses associated with producing the subject merchandise qualify as indirect selling expenses pursuant to 19 U.S.C. § 1677a(d)(1).  The statute does not support such a broad interpretation of section 1677a(d)(1).  *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. at 27,351 (rejecting argument that Commerce "should adjust for all expenses incurred on CEP sales, including expenses incurred in the foreign market").  As the Federal Circuit explained, "the expenses to be deducted from the CEP starting price to make it comparable to {export price} are those expenses associated with the more advanced level of trade represented by the CEP starting price{.}" *Micron Tech.*, 243 F.3d at 1313-14.  This does not include expenses that are "no more . . . related to the use of affiliated United States entities than the raw material costs incurred during the production of the merchandise." *Id.* at 1314.[10]

Finally, the Court should also reject Domtar's policy argument that treating the challenged expense as an indirect selling expense would purportedly "make{} for good policy" and would encourage Koehler to "resolve its outstanding debt."  Domtar Br. at 10-11.  Respectfully, such policy decisions are to be made by Congress.  Commerce's role is to "carry out {its} statutory mandate*," Sigma Corp. v. United States*, 117 F.3d 1401, 1405 (Fed. Cir. 1997), and the Court's role is to review whether Commerce's determination is lawful and supported by substantial evidence.  19 U.S.C. § 1516a(b)(1)(B)(i).  Domtar's preferred policy outcome provides no basis for disrupting Commerce's well-supported determination.

---

[10]  Moreover, Domtar does not challenge Commerce's determination that the disputed interest expense may be included in the interest expense ratio as part of the cost of production, and thus incorporated in the sales-below-cost test in determining normal value. *See* IDM at 7.  In describing Commerce's authority to make adjustments to normal value pursuant to § 1677b(a)(6)(C) (cross referenced in section 351.402(b)), the Statement of Administrative Action accompanying the Uruguay Round Agreements Act states:  "With respect to each of these adjustments, as well as with all other adjustments, Commerce will ensure that *there is no overlap or double-counting of adjustments*."  SAA at 828 (emphasis added).

## <u>CONCLUSION</u>

Because Commerce's determination not to deduct the relevant accrued interest from the

constructed export price is lawful and supported by substantial evidence, we respectfully request

that the Court sustain Commerce's final results.

Respectfully submitted,

YAAKOV A. ROTH
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

OF COUNSEL:

/s/ Emma E. Bond
EMMA E. BOND
RUSLAN KLAFEHN                          Senior Trial Counsel
Attorney                                Commercial Litigation Branch
Office of the Chief Counsel             U.S. Department of Justice
   for Trade Enforcement & Compliance   P.O. Box 480
U.S. Department of Commerce             Washington, DC 20044
                     (202) 305-2034
                     Email: emma.e.bond@usdoj.gov

April 1, 2025                           Attorneys for Defendant

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains no more than 6,832 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

Dated: April 1, 2025                     /s/ Emma E. Bond
                                         Emma E. Bond
                                         Counsel for Defendant