UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE THE HONORABLE GARY S. KATZMANN, JUDGE

|   |   |
|---|---|
| DOMTAR CORPORTATION,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>  Defendant,<br><br>  and<br><br>KOEHLER PAPER SE,<br>MATRA AMERICAS LLC and,<br>MATRA ATLANTIC GmbH,<br><br>  Defendant-Intervenors. | Court No. 24-00113 |

**REPLY BRIEF OF PLAINTIFF DOMTAR CORPORATION
IN SUPPORT OF ITS RULE 56.2 MOTION FOR
JUDGMENT UPON THE AGENCY RECORD**

             Stephen J. Orava
             Daniel L. Schneiderman
             KING & SPALDING LLP
             1700 Pennsylvania Avenue, NW
             Washington, DC  20006
             (202) 737-0500

             *Counsel For Domtar Corporation*

May 1, 2025

## **TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................2

    I.    COMMERCE ERRED IN FAILING TO REDUCE CEP BY INTEREST ON UNPAID ANTIDUMPING DUTIES ........................2

        A.    Commerce Wrongly Considered Treatment Of Koehler's Interest Expense As An Indirect Selling Expense Was Precluded By Statute ..................................................................2

        B.    The Alternative *Post-Hoc* Rationales Offered By Defendant Should Be Rejected .......................................................6

        C.    The Alternative Rationale Offered By Defendant-Intervenors Also Should Be Rejected ........................................11

CONCLUSION AND PRAYER FOR RELIEF ....................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Micron Technology, Inc. v. United States*,
  243 F.3d 1301 (Fed. Cir. 2001) ...........................................................................................9

*OCP S.A. v. United States*,
  Slip Op. 2025-32 (March 27, 2025) .....................................................................................4

*Taizhou United Imp. & Exp. Co. v. United States*,
  560 F. Supp. 3d 1316 (2022) ...............................................................................................6

*United States v. Koehler Oberkirch GmbH*,
  Slip Op. 2025-31 (March 27, 2025) ..............................................................................5, 11

**Statutes**

19 U.S.C. § 1677(25) ........................................................................................................................3

19 U.S.C. § 1677a(c)(2)(A) ........................................................................................................6, 7

19 U.S.C. § 1677a(d)(1) .........................................................................................................*passim*

**Other Authorities**

19 C.F.R. § 351.402(b) .............................................................................................................6, 7, 8

*Aluminum Foil From the Republic of Türkiye: Final Results of
  Antidumping Duty Administrative Review; 2021-2022*, 89 Fed.
  Reg. 48889 (June 10, 2024) . .........................................................................................9, 10

*Antidumping Duty Orders: Lightweight Thermal Paper From
  Germany and the People's Republic of China*, 73 Fed. Reg. 70959
  (November 24, 2008) ...................................................................................................*passim*

*Certain Uncoated Paper from Brazil*, 81 Fed. Reg. 3115 (January 20,
  2016) ....................................................................................................................................8

*Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360 (Dec. 7, 2011) ...................................................................................................7

*Thermal Paper From Germany, Japan, the Republic of Korea, and Spain: Antidumping Duty Orders*, 86 Fed. Reg. 66284 (November 22, 2021) ................................................................................................*passim*

# REPLY BRIEF OF PLAINTIFF DOMTAR CORPORATION IN SUPPORT OF ITS RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD

Plaintiff Domtar Corporation submits this reply brief in support of its Motion for Judgment on the Agency Record, *see* Plaintiff Domtar Corporation's Memorandum Of Law In Support Of Rule 56.2 Motion For Judgment Upon The Agency Record (Jan. 31, 2025) (ECF No. 28) ("*Pl. Br.*"), and in opposition to the response briefs filed by the government and by defendant-intervenors Koehler Paper SE ("Koehler"), Matra Americas, LLC and Matra Atlantic GmbH ("Matra"). *See* Defendant's Response To Plaintiff's Motion for Judgment on the Agency Record (April 1, 2025) (ECF No. 29) ("*Def. Br.*"); Response Brief Of Koehler Paper SE, And Matra Americas, LLC and Matra Atlantic GmbH (April 1, 2025) (ECF No. 31) ("*Intervenors' Br.*").

For the reasons explained in Plaintiff's initial brief and as further detailed below, this Court should remand with instructions for the Department of Commerce ("Commerce") to reconsider certain aspects of the final results of the first administrative review of the antidumping duty order on thermal paper from Germany. *See Thermal Paper From the Federal Republic of Germany: Final Results of Antidumping Duty Administrative Review; 2021–2022*, 89 Fed. Reg. 47517 (Dep't Commerce June 3, 2024) (P.R. 140) and the accompanying Issues and Decision Memorandum ("*IDM*") dated May 24, 2024 (P.R. 135) (altogether,

the "*Final Results*").[1]

## ARGUMENT

I. **COMMERCE ERRED IN FAILING TO REDUCE CEP BY INTEREST ON UNPAID ANTIDUMPING DUTIES**

    A. **Commerce Wrongly Considered Treatment Of Koehler's Interest Expense As An Indirect Selling Expense Was Precluded By Statute**

As explained in Plaintiff's opening brief, during the first review period of the *2021 Order* on thermal paper from Germany, substantial interest accrued on Koehler's unpaid antidumping duties arising from the now-revoked *2008 Order* on thermal paper from Germany. It is Plaintiff's contention that Commerce, in calculating Koehler's dumping margin in the *Final Results*, should have treated the interest as indirect selling expenses to be deducted from constructed export price ("CEP"). *See Pl. Br.* at 7-11. In its response, the government contends it was prohibited by statute from doing so. According to Defendant, 19 U.S.C. § 1677a(d)(1) permits the deduction of indirect selling expenses incurred "in selling the subject merchandise." *Def. Br.* at 13-14. The government concludes that,

---

[1] The *Final Results* involved the first administrative review of the antidumping order on thermal paper from Germany issued in 2021. *See Thermal Paper From Germany, Japan, the Republic of Korea, and Spain: Antidumping Duty Orders*, 86 Fed. Reg. 66284 (November 22, 2021) (the "*2021 Order*"). That order is distinct from the now-revoked 2008 antidumping order that had also covered thermal paper from Germany. *See Antidumping Duty Orders: Lightweight Thermal Paper From Germany and the People's Republic of China*, 73 Fed. Reg. 70959 (November 24, 2008) (the "*2008 Order*").

- 2 -

because the underlying antidumping duty liability arose from sales under the prior *2008 Order*, the interest accruing thereon during the instant review period cannot relate to sales of "subject merchandise" under the existing *2021 Order*. *Id*. at 14-16.

Defendant misreads the statute. The term "subject merchandise" is defined as "the class or kind of merchandise that is within the scope of an investigation, a review, a suspension agreement, an order under this subtitle or section 1303 of this title, or a finding under the Antidumping Act, 1921." 19 U.S.C. § 1677(25). Defendant observes that "the scope of the *2008 Order* is not identical to the scope of the current *2021 Order* – with the two scopes differing with respect to the basis weight of the thermal paper." *Def. Br*. at 18. The government makes no argument, however, that the "*class or kind of merchandise*" covered by the scope of the *2021 Order* (and the instant first review of that order that is the subject of this appeal) differs from the "*class or kind of merchandise*" covered by the scope of the *2008 Order*. Nor could it. Both orders encompass the same "class or kind of merchandise," *i.e.*, thermal paper in rolls. Indeed, as Plaintiff previously demonstrated, the scope of the *2021 Order* includes the exact same products covered by the prior *2008 Order*, plus jumbo rolls in basis weights exceeding 70 grams per square meter ("gsm"). *See Pl. Br*. at n.1. Moreover, the *2021 Order* treats *all* thermal paper rolls -- including both (1) the set of products previously

- 3 -

covered by the *2008 Order* and (2) the heavier basis weight jumbo rolls -- as part of the same, single "class or kind of merchandise." *2021 Order,* 86 Fed. Reg. at 66286-87.

Under the plain language of the statute, therefore, the term "subject merchandise" for purposes of the *2021 Order* includes the same class or kind of merchandise, *i.e.*, thermal paper in rolls, as that falling within the scope of the *2008 Order*. Commerce's stated rationale for denying the requested adjustment, *i.e.*, that the expenses did not relate to "subject merchandise … under the current order," IDM at 7 (P.R. 135), lacks textual support in the statute. The Court must give effect to the plain language of the statute. *See OCP S.A. v. United States*, Slip Op. 2025-32 (March 27, 2025) at 9-10 ("The interpretation of statutes and agency regulations are questions of law, which this Court reviews *de novo*…. In determining the meaning of a statutory provision, this Court looks first to its language, giving the words used their ordinary meaning…. Furthermore, *Chevron* is dead; and courts no longer defer to agencies' interpretations of their governing statutes") (internal citations omitted). Accordingly, the *Final Results* cannot be upheld on the erroneous reading of the statute upon which Commerce relied.

In this regard, it should not go unnoticed that Defendant itself has pointed to the equivalent coverage of the 2008 and 2021 orders as a basis to claim jurisdiction over Koehler in its separate action (Ct. No. 24-00014) to recover the unpaid duties

and interest, which now total $267,530,486.  *United States v. Koehler Oberkirch GmbH,* Slip Op. 2025-31 (March 27, 2025) at 6.  In particular, the government pointed to Koehler's participation in litigation arising from the *2021 Order* as a basis for establishing personal jurisdiction over Koehler in a collections action arising from a (substantially identical) *2008 Order*.  As restated by this Court in its recent decision finding such personal jurisdiction, albeit on other grounds:

> The Antidumping Duty Order that gave rise to the unpaid duties at issue in this case has a scope that overlaps with the scope of the determination that Koehler Paper challenged (and continues to challenge) in the *Matra* litigation.  This similarity, the Government argues, means that Koehler Paper cannot fairly challenge one determination as a plaintiff without consenting to jurisdiction as a defendant in an action involving the other determination.

*United States v. Koehler Oberkirch GmbH,* Slip Op. 2025-31 (March 27, 2025) at 14-15.  The government does not explain why this similarity between the orders would not also enable it to treat the same class or kind of thermal paper as "subject merchandise" for purposes of both orders.  The underlying liability arose from Koehler's sales of thermal paper to U.S. customers (under the *2008 Order*), and it is entirely reasonable that the interest accruing thereon during the instant first review period should be attributed to Koehler's sales of thermal paper to U.S. customers (under the *2021 Order*), given that all of the sales at issue were of the same "class or kind of merchandise."

## B. The Alternative *Post-Hoc* Rationales Offered By Defendant Should Be Rejected

Although the sole reason why Commerce denied the CEP adjustment sought by Plaintiff was because the interest expenses purportedly did not relate to sales of the "subject merchandise" under the *2021 Order*, IDM at 7 (P.R. 135), in its response brief, the government also suggests various alternative rationales. For example:

- Defendant points to the longstanding practice not to treat antidumping duties as "United States import duties" to be deducted from CEP pursuant to 19 U.S.C. § 1677a(c)(2)(A). *Def. Br.* at 12.

- Defendant claims Plaintiff's characterization of the antidumping liabilities as arising from Koehler's thermal paper sales activities in the United States is "*ipse dixit.*" *Def. Br.* at 17.

- Defendant contends that the interest expense did not "relate to the sale to an unaffiliated purchaser," as required by 19 C.F.R. § 351.402(b). *Def. Br.* at 15.

- Defendant observes that the interest was incurred as a fixed expense that will continue to accrue (unless or until paid), "regardless of whether Koehler sells merchandise in the United States that is subject to the current *2021 Order*." *Def. Br.* at 16.

Commerce, however, did not rely on any of these purported alternative grounds as a reason for denying the CEP adjustment here. IDM at 7 (P.R. 135). This court "may not accept counsel's *post hoc* rationalizations for agency action … it is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Taizhou United Imp. & Exp. Co. v. United States*, 46 CIT __, __, 560 F. Supp. 3d 1316, 1324 (2022), quoting *SEC v. Chenery*, 332

U.S. 194, 196 (1947). There is no reason, therefore, for the Court to entertain these new, alternative arguments.

Moreover, Defendant's arguments lack merit. First, the "duties as a cost" argument is a red herring. Plaintiff has not suggested that the expenses at issue should be deducted as "import duties" under 19 U.S.C. § 1677a(c)(2)(A). Koehler never even paid the antidumping duties owed. The only issue on appeal is whether interest expenses accruing on that debt may be treated as "selling expenses" under 19 U.S.C. § 1677a(d)(1), a separate statutory provision. Whether or not antidumping duties should be construed as "import duties" under 19 U.S.C. § 1677a(c)(2)(A) has no bearing on this case.

Similarly, Defendant has no basis to contest that the antidumping duties arose from Koehler's activities occurring in the United States related to sales of thermal paper to unaffiliated purchasers. As previously explained, during the underlying reviews of the *2008 Order* giving rise to the liabilities, Commerce found that Koehler itself acted as the importer of record for sales that were then made to unaffiliated customers. *See Pl. Br.* at 8-9, citing *See Lightweight Thermal Paper from Germany*, 76 Fed. Reg. 76360, 76364 (Dec. 7, 2011). As required by 19 C.F.R. § 351.402(b), the antidumping duties were "associated with commercial activities in the United States," and they necessarily "relate{d} to the sale to an unaffiliated purchaser." This obviously was not the type of expense that even

*could have been* incurred in Germany or been attributable to Koehler's home market thermal paper sales.

Defendant argues that the interest expenses at issue cannot be treated as "selling expenses" to be deducted from CEP, because they are fixed costs that continue to accrue (unless or until paid) "regardless of whether Koehler sells merchandise in the United States that is subject to the current *2021 Order*." *Def. Br.* at 16.  But whether the expenses at issue are fixed or variable is irrelevant to the question of whether they are deductible from CEP.  "Selling expenses" under 19 U.S.C. § 1677a(d)(1) are not limited to variable (*e.g.*, direct) selling expenses and can also include fixed (*e.g.*, indirect) selling expenses.  Indeed, the antidumping questionnaire instructs respondents that they must include fixed selling expenses such as "sales office rent and salesmen's salaries incurred in the United States" as part of "indirect selling expenses incurred in the United States" (reported in the field "INDIRSU").  Antidumping Questionnaire (Feb. 8, 2023) at C-33 (P.R. 24).  Such indirect selling expenses are routinely deducted from CEP. *See, e.g., Certain Uncoated Paper from Brazil*, 81 Fed. Reg. 3115 (January 20, 2016) (final determination) at Comment 12.  To be deducted from CEP, it is only necessary that the indirect selling expenses be "associated with commercial activities in the United States" and "relate{d} to the sale to an unaffiliated purchaser."  19 C.F.R. § 351.402(b).

The government claims that this case "aligns" with *Micron Technology, Inc. v. United States*, 243 F.3d 1301 (Fed. Cir. 2001) ("*Micron*"), which held that salesmen's salaries and office rents incurred in Korea could not be deducted from CEP. *Def. Br.* at 15-16. But the reason why the fixed selling expenses at issue in *Micron* were not deducted from CEP was not because they were indirect; rather, it was because they were not associated with commercial activities occurring in the United States related to sales to unaffiliated purchasers. *Micron* at 1313-14. In this case, unlike in *Micron*, the expenses were incurred by Koehler acting as the importer of record in the United States for sales of thermal paper to U.S. customers. Accordingly, the expenses meet the standard for deduction under the applicable regulation.

Defendant contends that, "if accepted, Domtar's argument would mean that *any* financing expenses associated with producing the subject merchandise qualify as indirect selling expenses pursuant to 19 U.S.C. § 1677a(d)(1)." *Def. Br.* at 22. But that is incorrect, because the issue here is limited to interest expenses associated with commercial activities *occurring in the United States*. In fact, Defendant acknowledges Plaintiff's point that interest expenses incurred in connection with U.S. selling activities previously have been treated as U.S. indirect selling expenses to be deducted from CEP. *Def. Br.* at 19, citing *Certain Aluminum Foil From the Republic of Türkiye: Final Results of Antidumping Duty*

*Administrative Review; 2021-2022*, 89 Fed. Reg. 48889 (June 10, 2024), Dec. Memo at Comment 4 ("*Aluminum Foil from Türkiye*"). According to Defendant, however, *Aluminum Foil from Türkiye* "is plainly distinguishable from this case, in which Commerce found that the relevant interest expenses were related to a revoked antidumping duty order, not the sale of merchandise to an unaffiliated purchaser in the United States." *Def. Br.* at 19-20. Indeed, throughout its brief, Defendant repeatedly falls back on the point that -- even if the activities occurred in the United States with respect to Koehler's thermal paper sales to unaffiliated customers -- those activities related to sales of subject merchandise under the *2008 Order* rather than the *2021 Order*. *Def. Br*. at 15, 17-18, 20-21. In doing so, however, Defendant simply repeats its erroneous reading of the statute already addressed above. Defendant offers no compelling distinction between *Aluminum Foil from Türkiye* and this case apart from its construction of the term "subject merchandise" as it appears at 19 U.S.C. § 1677a(d)(1). Because the government's interpretation of that provision lacks textual support, it should be rejected, and this case should be remanded for Commerce to reconsider the matter.[2]

---

[2] Defendant claims that, if Commerce were to treat the interest expense at issue as a deduction from CEP, it would result in "double-counting," because the same interest expense already is captured as a component of Koehler's cost of production ("COP"). *Def. Br.* at 22, n.10. There would be no such double-counting, however, as Plaintiff's position is that the interest expense "should have been treated as a price adjustment rather than as a cost component." *Pl. Br.* at 9. *See also id.* at 3, 6, and 8.

### C. The Alternative Rationale Offered By Defendant-Intervenors Also Should Be Rejected

Defendant-Intervenors present a novel argument for why the interest expenses should not be captured here. According to Defendant-Intervenors, the *2008 Order* under which the liability arose applied to "different parties" from those subject to the instant review of the *2021 Order*. *Intervenors' Br*. at 7. This Court, however, already has held that Defendant-Intervenor Koehler Paper SE is the successor in interest to Koehler Oberkirch, which in turn succeeded to the antidumping duty liabilities at issue incurred by Papierfabrik August Koehler AG. *United States v. Koehler Oberkirch GmbH,* Slip Op. 2025-31 (March 27, 2025) at 15-21. Indeed, in that case, the government made a "prima facie showing" that Koehler's corporate reorganizations were "fraudulently-motivated" to avoid the antidumping liabilities. *Id*. at 21. Just as those fraudulently-motivated reorganizations do not shield Koehler from the government's collections action, they should not shield Koehler in this case from having to recognize an interest expense related to its U.S. thermal paper sales. Koehler should not be entitled to maintain virtually duty-free access to the U.S. market under the *2021 Order* by having Commerce effectively ignore the substantial interest expense accruing each year on its $267,530,486 of unpaid antidumping duties arising under the *2008 Order*.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above, the Plaintiff requests that the Court enter judgment on the administrative record in its favor and remand the *Final Results* with instructions for Commerce to reconsider whether interest on unpaid antidumping duties should be deducted from CEP.

        Respectfully submitted,

        */s/ Daniel L. Schneiderman*
        Stephen J. Orava
        SOrava@KSLAW.com

        Daniel L. Schneiderman
        dschneiderman@kslaw.com

        KING & SPALDING LLP
        1700 Pennsylvania Avenue, NW
        Washington, DC  20006
        (202) 737-0500

        *Counsel For Domtar Corporation*

May 1, 2025

## CERTIFICATE OF COMPLIANCE
## WITH WORD COUNT LIMITATIONS

Pursuant to paragraph 2(B)(2) of the U.S. Court of International Trade's *Standard Chambers Procedures*, the undersigned certifies that this brief complies with the word count limitations set forth in the Court's scheduling order. Exclusive of the exempted portions, as provided in paragraph 2(B)(1), this brief includes <u>2,729</u> words. In preparing this certificate, the undersigned has relied upon the word count feature of the word-processing system used to prepare the submission.

<u>/s/ Daniel L. Schneiderman</u>
Daniel L. Schneiderman

KING & SPALDING LLP
1700 Pennsylvania Avenue, NW,
Washington, DC 20006
(202) 737-0500

*Counsel For Domtar Corporation*

May 1, 2025